**In re Dale Vern ALCORN, and Bebe Alcorn, Debtors.**

**No. 99-18697-SBB.**

United States Bankruptcy Court, D. Colorado.

Aug. 21, 2000.

William G. Horlbeck, William G. Horlbeck, P.C., Denver, CO, for Save It, LLC.

Dennis B. Green, Wollins, Hellman & Green, Aspen, CO, for Debtors.

Douglas E. Larson, Grand Junction, CO, Former Chapter 7 Trustee in the Dale and Bebe Alcorn Bankruptcy Case.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on Save It, LLC's ("Creditor") Motion to Reopen Case Pursuant to 11 U.S.C. § 350 and Rule 5010 Fed.R.Bankr.P., filed June 28, 2000 ("Motion to Reopen Case"), and the Objection thereto filed by Dale and Bebe Alcorn ("Debtors") on July 14, 2000. The Court made its oral ruling denying the Creditor's Motion to Reopen Case, on the record, in open Court on August 7, 2000. At that time, the Court reserved the right to write an opinion in regard to this matter. The Court, having reviewed the file and being advised in the premises, enters the following findings of fact, conclusions of law and order.

## ISSUE

The question presented to the Court appears to be one of first impression in this District. The Creditor is asking the Court to reopen this Chapter 7 case to allow the Trustee to administer an asset acquired by the Debtors through redemption of property after their bankruptcy. The issue is whether a Chapter 7 bankruptcy case should be reopened to enable a trustee to liquidate, for the benefit of estate creditors, certain real property redeemed by the debtors following a foreclosure sale on that property. Here, the Creditor wants the equity from the Property put into the Estate to pay a portion of the Estate's creditors' claims. The essence of the dispute is who should have the benefit of that equity: the unsecured creditors or the Debtors?

## FACTS

Debtors filed for relief under Chapter 7 of the United States Bankruptcy Code on July 12, 1999. Thereafter, Douglas E. Larson ("Trustee") was appointed as Interim Trustee, and following the Meeting of Creditors, in the absence of the election of another trustee, he became and served as the Chapter 7 Trustee in the Debtors' case.

Debtors' Schedule A and D reflect that their residence was located at 511 County Road 216, Rifle, Garfield County, Colorado ("Property"), with a value of $260,000.00. The schedules also reflect that there was a Promissory Note ("Note") on the Property, which Note was secured by a First Deed of Trust ("Deed of Trust") held by United Companies Lending Corporation ("UC Lending") in the amount of $249,-000.00.

On August 17, 1999, UC Lending filed a Motion for Relief from Automatic Stay due to a default by the Debtors in their payments to UC Lending under the Note and Deed of Trust. On September 13, 1999, the Bankruptcy Court entered an Order grant-

ing UC Lending relief from the automatic stay.

On August 20, 1999, the Meeting of Creditors was conducted pursuant to 11 U.S.C. § 341(a). Thereafter, on August 31, 1999, the Trustee filed his Report of No Distribution. On November 3, 1999, the case was closed by the Bankruptcy Court.

On November 19, 1999, UC Lending commenced a Public Trustee foreclosure proceeding against the Property. On January 12, 2000, the Garfield County Public Trustee sold the Property at public auction. UC Lending tendered a deficiency bid of $181,397.88. UC Lending was the successful bidder at the sale. The Public Trustee issued a Certificate of Purchase to UC Lending for the Property. In addition, the Public Trustee announced at the conclusion of the foreclosure sale that the redemption period would be six (6) months.

On April 14, 2000, UC Lending sold its Note—which reflected a deficiency balance of $89,190.27—together with the Certificate of Purchase to the within Creditor.

In May 2000, the Debtors obtained a new loan in the amount of $190,705.11 secured by a new deed of trust against the Property. The loan proceeds were used by the Debtors to successfully redeem the property from the Public Trustee foreclosure sale.

## ARGUMENT

In brief, the Creditor contends that the Debtors, by exercising their right of redemption, were able to reacquire their Property, valued at $260,000.00, for $190,-705.11. Thus, the Creditor argues that, because UC Lending tendered a deficiency bid at the Public Trustee sale, the Debtors were able to acquire, or "preserve," $30,000.00 to $60,000.00 of equity in the Property based upon the value of the Property listed in the bankruptcy schedules, $260,000.00.[1]

The Creditor specifically asserts that "Debtors' equity in the ... Property is an unadministered asset that was unknown to the Trustee at the time the case was closed because it became available solely by virtue of [UC Lending's] deficiency bid at the Public Trustee sale held two months *after* closure of the case." (Emphasis in the original.) The Creditor contends that this is a "windfall" that should be shared by the unsecured creditors due to the unanticipated circumstances of the deficiency bid and the redemption by the Debtors at the deficiency bid amount (plus interest, fees and costs). Thus, pursuant to Rule 5010, Fed.R.Bankr.P., and 11 U.S.C. § 350(b), the Creditor requests that this Court reopen the Debtors' case.

In addition, the Creditor seeks an order from this Court vacating the abandonment of the Property by the Trustee. In support of the contention that this Court should vacate the abandonment, the Creditor cites Rule 60(b)(2) and (6), Fed.R.Civ.P., and the case *In re Woods*, 173 F.3d 770 (10th Cir.1999), *cert. denied sub nom. Woods v. Kenan*, —— U.S. ——, 120 S.Ct. 187, 145 L.Ed.2d 157 (1999).

Debtors' Response to the Creditor's Motion to Reopen Case, in brief, contends: (1) UC Lending knowingly bid the deficiency thus triggering the ability of the Debtors to redeem the Property at a lesser amount than the total indebtedness and (2) as a result, UC Lending, and now this Creditor, have no one to blame for the current "windfall" to Debtors other than themselves and therefore there is no justification to reopen the case or vacate the abandonment.

Importantly, the Court notes and the Creditor concedes that (1) Debtors did nothing wrong by exercising their right of redemption—i.e. no "bad faith," malice, ar-

---

1. The current value of the Property is alleged to be between $270,000.00 and $300,000.00 by the Creditor. Taking the current alleged value into account, it would appear that $80,000.00 to $110,000 in equity would be preserved (not including Debtors' exemptions, taxes or closing costs in the event that the Trustee were to sell the Property).

tifice or improper device or machinations were used by the Debtors in exercising their redemption rights; (2) Debtors timely and properly listed the value of the Property and the lien thereon in their bankruptcy schedules; (3) the Trustee properly administered this estate; (4) the case was otherwise properly closed by the Court; and (5) there is no known basis or explanation for the deficiency bid at the foreclosure sale conducted after the case was closed.

## DISCUSSION

### 1. *Validity and Sufficiency of the Deficiency Bid*

The most curious feature of this unique situation is traced to the deficiency bid by UC Lending. Creditor acknowledges that it does not know why UC Lending made a deficiency bid of $181,397.88. Creditor further stated, on the record in open Court, that UC Lending had, in fact, not even obtained an appraisal before tendering the deficiency bid. It is recognized by the parties that this bid was roughly $50,000.00 to $70,000.00 less than the debt owed on the Property. Furthermore, the bid was approximately $80,000.00 less than the value of the Property based upon the Debtors' bankruptcy schedules.

Under applicable state law, the Court questions the propriety of the bid by UC Lending. Pursuant to Colo. Rev. Stat. 38–38–106(1), the owner of a note and deed of trust "*shall* bid at least such owner's good faith estimate of the fair market value of the property being sold...." Here, UC Lending did not obtain an appraisal of the Property and it bid an amount significantly less than the debt owed and the value of the collateral. From all appearances, the bid of $181,397.88 was "pulled out of the air." Even the Creditor acknowledges that, indeed, the Property was probably worth $260,000.00 at the time the Debtors filed

for relief under the Bankruptcy Code and that the Property is now worth anywhere from $280,000.00 to over $300,000.00.

The foreclosure bidding strategy of UC Lending in making a deficiency bid appears a bit unusual and ill-conceived; after all, the unsecured claim resulting from the deficiency bid would be discharged in the Debtors' Chapter 7 case. Furthermore, the Creditor purchased the Note together with the Certificate of Purchase *after the Debtors' discharge and before the Debtors' right to redeem expired.* Why UC Lending bid the deficiency when it did is a mystery.

This transaction appears to be a problematic strategy for a company, here the Creditor, in the business of buying and selling properties; it is a recipe for trouble. It seems a bit curious that the Creditor would expect to be able to pursue the deficiency or, for that matter, have any expectation to receive anything more than either (1) the redemption proceeds if redemption were to occur or (2) the Property in the event that the Debtors did not redeem. Barring evidence to the contrary—and there is none—the Creditor is assumed to have at least some knowledge of the foreclosure procedures of Colorado and would have recognized the possibility that Debtors might redeem the Property, thus leaving an uncollectible deficiency in light of the Debtors' discharge in bankruptcy.[2]

### 2. *Reopening a Case Pursuant to 11 U.S.C. § 350(b)*

▇ It is uncontested that the Debtors properly listed the Property, the value thereof and the lien amount held by UC Lending. The Trustee conducted the Meeting of Creditors, filed his Report of No Distribution and the case was closed pursuant to 11 U.S.C. § 350(a) and Rule 5009, Fed.R.Bankr.P. The facts demonstrate

---

**2.** Counsel for the Creditor indicated that the Creditor is, evidently, regularly in the business of buying distressed properties and/or bargain properties out of foreclosure. By in-

ference the Court might conclude that, generally, this is a savvy and able real estate operator.

that the Estate was administered and the Property abandoned.

■ Pursuant to 11 U.S.C. § 350(b), a "case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." This Court has broad discretion in reopening a case under 11 U.S.C. § 350(b). *Mendelsohn v. Ozer*, 241 B.R. 503 (E.D.N.Y.1997). This Court is to weigh the equitable factors in each case in determining whether it is appropriate to reopen a case. *Matter of Shondel*, 950 F.2d 1301, 1304 (7th Cir.1991). Here, the Court finds that the equitable factors weigh in favor of the Debtors and against the Creditor.

The *discovery* of previously undisclosed and unadministered assets has long been a reason to reopen a case under 11 U.S.C. § 350(b). *See In re Menk*, 241 B.R. 896, 911 (9th Cir. BAP 1999) (property that was not scheduled and was not administered retains its status as property of the estate after closing). This Court would have little hesitation to reopen a case for the administration of assets or value discovered after it had been hidden, omitted, obfuscated, or was otherwise the product of fraud, deceit or Debtors' wrongdoing. However, where the asset is fully disclosed, as here, but at some later time the value is determined to be greater than previously believed, many courts have recognized that abandonment remains irrevocable. *See In re DeVore*, 223 B.R. 193 (9th Cir. BAP 1998). Here, the Property was disclosed and fairly valued in the Debtors' schedules and then abandoned by operation of 11 U.S.C. § 554(c). Thus, at closing, the case was deemed administered. The parties in this case all agree that, but for the deficiency bid and the Debtors' redemption of the deficiency bid, there would be little or no "equity" for the Debtors. As a consequence, the Court will not reopen the bankruptcy case pursuant to 11 U.S.C. § 350(b).

3. *Relief from Judgment Pursuant to Fed.R.Civ.P. 60*

■ Creditor requests that this Court relieve it from the order closing the case and abandoning the Property in accordance with Fed.R.Civ.P. 60(b)(2) and (6). Pursuant to Rule 60, this Court "may relieve a party from a final ... order, or proceeding for the following reasons: ... (2) newly discovered evidence ...; or (6) any other reason justifying relief from the operation of the judgment."

■ First, under Rule 60(b)(2), the newly discovered evidence must have been in existence at the time of the trial (here, the time that the Court entered its Order closing the case). Evidence of events occurring after the closing of this case, is not generally newly discovered evidence. *Corex Corp. v. U.S.*, 638 F.2d 119 (9th Cir.1981) (evidence of events occurring after the trial is not newly discovered evidence); *see generally*, 11 Charles Alan Wright & Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure § 2859 (2d ed. 1995).

Second, Rule 60(b)(6) has been characterized—and is relied upon by this Creditor—as a "grand reservoir of equitable power to do justice in a particular case." *Woods*, 173 F.3d at 780. Here, however, justice is not served by granting the relief requested by the Creditor. Creditor's own actions have created the conundrum here. The policy of preserving the finality of these Debtors' bankruptcy case and discharge is at least equal to, if not of greater importance than, preserving for the Estate the Creditor's illusory putative post-discharge deficiency claim. *See e.g. In re Gracyk*, 103 B.R. 865, 867 (Bankr. N.D.Ohio 1989).

4. *The "Equity" is not Property of the Estate*

■ Pursuant to 11 U.S.C. § 541:

(A) the commencement of a case ... creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) ... all legal or equitable interests of the debtor in property as of the commencement of the case.

(Emphasis added.) Further, "'value' [for the purposes of exemptions] means fair market value *as of the date of the filing of the petition* or, with respect to property that becomes property of the estate after such date, as of the date such property becomes property of the estate." 11 U.S.C. § 522(a)(2) (emphasis added).

In light of the fact that the Property was abandoned and the Estate was closed at the time the "equity" became realized, the Property was not nor could it be property of the Estate. Furthermore, it is not after-acquired Property of the Estate. 11 U.S.C. § 541(a)(7). Under Section 541(a)(7), "any interest in property that the *estate* acquires after the commencement of the case" constitutes property of the estate." "By obvious implications property acquired postpetition by the *individual* debtor is usually not property of the estate." Lawrence P. King, Collier on Bankruptcy ¶ 541.03, 541–10 (15th ed.1999)(emphasis in the original)(citations omitted). Here, the Estate was terminated. The Property became reacquired by the Debtors by operation of redemption. The Property and the equity attributable thereto belongs to the Debtors, not to the closed Estate and the creditors.

## CONCLUSION

1. The case shall not be reopened pursuant to 11 U.S.C. § 350(b).

2. This case shall not be reopened under Rule 60(b)(2) or (6), Fed.R.Civ.P.

3. The abandonment entered by operation of the Order Closing this Case shall stand.

IT IS THEREFORE ORDERED that the Creditor's Motion to Reopen Case shall be and is hereby DENIED.