In re Frederick SCHOENEWERK and Lorrie A. Schoenewerk d/b/a Collision Concepts Corp. d/b/a Olympic Collision Corp., Debtors.

No. 802–82063–288.

United States Bankruptcy Court, E.D. New York.

June 16, 2003.

Jerome Lee Davidow, New York City, for Debtors.

Kirschenbaum & Kirschenbaum, Garden City, NY, for Trustee.

### Issue:

STAN BERNSTEIN, Bankruptcy Judge.

On June 5, 2003, Frederick and Lorrie A. Schoenewerk (debtors) filed a motion for an expedited determination that Kenneth Kirschenbaum, Esq., the chapter 7 trustee (trustee), has abandoned or can be deemed to have abandoned the estate's interest in the debtor's interest in their residence located at 255 Locust Drive, Rocky Point, N.Y. 11788 (property). In reply, the trustee has objected to the motion; therefore, the burden of proof shifts back to the moving party. Upon reviewing the pleadings and the docket of this Court, the Court has decided to deny the debtors' motion without hearing because it is entirely without merit on its face.

### Discussion:

■ On March 25, 2002 (Petition Date), the debtors filed a joint petition for relief under chapter 7 of the Bankruptcy Code. In their schedules of assets and liabilities, they stated under oath that the fair market value of their primary residence was $140,000, subject to a first mortgage indebtedness of $123,593. The debtors also claimed a joint household exemption of $20,000. The debtors' valuation of their residence was allegedly corroborated by a "market survey" prepared by a licensed real estate broker, which is attached to their motion. The broker placed a value on the property of between $145,000 and $155,000. The debtors allege that they mailed the trustee a copy of the broker's price opinion, including the data on comparable sales allegedly supporting the opinion. They also point out that the trustee had a full opportunity to examine the debtors under oath at the section 341 meeting of creditors, and they fully co-operated in responding to any of his concerns. The debtors further allege that the trustee was apparently satisfied that there was no material benefit to be gained by the trustee's selling their residence through a broker, and that his filing of a No–Asset Report (NDR) can only be deemed to be an abandonment of the estate's interest in their interest in the residence. Moreover, the debtors allege that they had a right to rely upon the trustee's "implied abandonment" and that their reliance is evidenced by the fact that they have listed the property for sale with a local real estate broker.

■ During cross-examination at an evidentiary hearing held on the record on May 30, 2003, Mr. Schoenewerk admitted that he and his wife had listed their residence for sale through a broker at an asking price of $249,900.[1] Indeed, recovering that equity for himself was the primary strategic goal of the individual creditor, Horst Klausing, who filed the complaint on June 28, 2002 that led to the trial on May 30, 2003. When the trustee learned of the listing agreement and the asking price, which had now become a matter of public record; his counsel sent a formal letter to the debtors'

---

1. The asking price was originally $265,000.

counsel, notifying the debtors that the trustee was withdrawing his no-asset report,[2] that they were precluded from continuing to list their residence for sale with an unauthorized broker, and that the debtors' nonexempt interest in the property remained vested in the trustee by operation of law.[3]

As his entire legal authority, the debtors' counsel relied wholly on just one opinion from another bankruptcy judge in this district that by filing a no-asset report, the trustee can be deemed to have abandoned any interest of the estate in the debtor's interest in real or personal property. *In re Ozer*, 208 B.R. 630 (Bankr.E.D.N.Y. 1997). Any opinion issued by a colleague of this judge would ordinarily be entitled to very serious consideration out of respect to one's peers. However, the salient fact is the decision was reversed by the district court, *Mendelsohn v. Ozer (In re Ozer)*, 241 B.R. 503 (E.D.N.Y.1997).[4] Moreover, as the trustee points out in his responsive memorandum, the posture of the Schoenewerk case makes it far easier to decide the contested matter in favor of the trustee. In the *Ozer* case, the Clerk of the Court had already closed the chapter 7 estate,

and it took the trustee a full eighteen months before filing his motion to reopen the closed case. That motion was denied by the Bankruptcy Court within the exercise of her discretion, but later reversed as an abuse of discretion.

This case, as the trustee points out, has not been closed. The status of the case remains open, not due to any "mistake or inadvertence" of the Clerk's office, as alleged by the debtors' counsel; quite to the contrary, the Clerk's standard protocol is *not to close* any chapter 7 case until at least ten days beyond the date until (i) the Bankruptcy Court has determined every complaint filed under section 727(a) or under section 523(a) and/or (ii) every appeal to the district court or to the Court of Appeals of any judgment or order of a bankruptcy judge in this district is finally concluded.[5]

■ Section 554(a) expressly authorizes the trustee to file a motion on notice and hearing to abandon any nonexempt asset that is burdensome or inconsequential value or benefit to the estate. Here the trustee did not so move, so section (a) is inapplicable.[6] Section 554(b) authorizes a

---

**2.** The Rescission was filed by the trustee on June 5, 2003 and the Trustee's Notice of Assets and Request for Notice to Creditors was filed the same date. Proof of claims are now due by September 3, 2003.

**3.** Under section 725 of the Bankruptcy Code, the trustee bears the responsibility of determining if and how to dispose of property of the estate.

**4.** This case was cited in *In re Sweeney*, 275 B.R. 730, 735 (Bankr.W.D.Pa.2002); *See also In re Alcorn*, 252 B.R. 174, 178 (Bankr. D.Colo.2000) ("the Court would have little hesitation to reopen a case for the administration of assets or value discovered after it had been hidden, omitted, obfuscated, or was otherwise the product of fraud, deceit or Debtors' wrongdoing"); *In re Winebrenner*, 170 B.R. 878, 882 (Bankr.E.D.Va.1994) ("Admin-

istering undisclosed assets has been frequently held sufficient cause to reopen a bankruptcy case.")

**5.** The debtors' counsel could have ascertained this protocol in a two-minute phone call to the Clerk's office, but he preferred to speculate about the reasons for this case's remaining open (at the cost of denigrating the Clerk's office) rather engaging in the most minimal form of due diligence required under Fed. R. Bankr.P. 9011 before signing his name to a pleading.

**6.** And even an asset, formally abandoned, may be reclaimed by the chapter 7 trustee for the benefit of creditors. "Abandonment may be revoked, however, if the debtor concealed information from the trustee, or if the trustee did not possess sufficient information about

party in interest to file a motion on notice and hearing for the Court, in the exercise of its discretion, to order the trustee to abandon any asset that meets the criteria set forth in subsection 554(b). Even assuming that the debtors' pending motion should be deemed to fall under section (b), although it is not pled in those terms, section (b) would not be applicable because the debtors claim that there is substantial value in the nonexempt equity in their residence. Subsection (c) provides that unless the court orders otherwise, any property that is scheduled by the debtors "not otherwise administered at the time of the closing of a case is abandoned to the debtor ..." This subsection also does not apply because the case has not been closed.

■ If Congress intended to treat the filing of a no-asset report as a dispositive legal event with respect to any abandonment issue, it could have so provided, but it did not, and no negative inference may be drawn from the structure of this subsection to support the debtors' position.[7] Indeed, subsection (d) makes the redundant point, to avoid any misunderstanding on anybody's part, that "Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in this case remains property of the estate." Thus, on this narrow legal issue, the debtors have completely ignored the plain language of the Code that requires either an affirmative act of the trustee to abandon an asset of the estate under subsection (a) or an implied act of the trustee to abandon an asset that is not administered, which becomes effective only upon the closing of the case.

■ In further support of their argument, the debtors refer to Fed. R. Bankr.P. 5009, which provides, in relevant part:

> If in a chapter 7 ... case the trustee has filed a *final report* and a *final account* and has certified that the estate has been fully administered, and if within 30 days no objection has been filed by the United States trustee or a party in interest, there shall be a presumption that the estate has been fully administered. (Emphasis added)

The debtors cited no case construing this Rule and have failed completely to understand the purport of this Rule. First of all, Rule 5009 does nothing other than to restate section 350(a), to add a minor modification to specify a thirty-day period during which the United States trustee or any party in interest may file an objection to close a case, and to add a presumption that the estate has been fully administered if no timely objection is filed.

To see this Rule in context, one has to step back and understand that one of the reforms under the Bankruptcy Code, as enacted in 1978, was intended to relieve bankruptcy judges of the heavy burden of case administration in its most routine and tedious bureaucratic aspects, including the actual issuance of orders closing chapter 7 no-asset cases that comprise over 90% of the chapter 7 cases filed by natural persons. Most case administrative functions were ultimately reallocated to an administrative agency in the executive branch of

the claim." *In re Lintz W. Side Lumber, Inc.,* 655 F.2d 786, 791–792 (7th Cir.1981).

7. "A failure to pursue a particular claim by a trustee ... does not amount to abandonment of the claim." *In re Eagle Enters.,* 265 B.R. 671, 679 (E.D.Pa.2001); In *Polvay v. B.O.*

*Acquisitions (In re Betty Owens Sch.),* 1997 WL 188127, *3, 1997 U.S. Dist. LEXIS 5877, *9 (S.D.N.Y.1997), the court stated that "... inaction alone, ... is insufficient to constitute a section 554(a) abandonment."

the federal government, to wit, the Executive Office of the United States Trustees lodged in the U.S. Department of Justice and reporting ultimately to the U.S. Attorney General. One of the central functions of the Executive Office of the United States Trustee is to appoint and supervise the private panel of chapter 7 trustees. As part of the process of supervising chapter 7 cases, it became the primary administrative responsibility of the United States trustee to make certain that the panel trustees moved their assigned cases to an expedited closing. The function, however, of actual closing a case remained vested with the Clerk of the Court. Since the filing of a final report in a no-asset case still requires some sort of administrative review by the United States trustee this worked to ensure that trustees timely cooperated in the closing of no-asset cases.[8]

With this as the institutional background, it becomes understandable that this Rule is intended to address two governmental entities and not parties in interest, namely, the Clerk of the Bankruptcy Court and the United States trustee. This Rule sets up a "default rule" that authorizes the Clerk to close a case, absent other unexpressed conditions, when a thirty-day period has run after the trustee files a no-asset report with the Clerk and the United States trustee and the United States has not filed an objection that would bring the case back to the attention of the judge assigned to the case. If there were no such default rule, the only way the Clerk's office could ascertain whether the United States trustee was fully satisfied with the chapter 7 trustee's administration of the case would be to insist that the United States trustee take the additional affirmative act of sending in periodic reports advising the Clerk to close a scheduled list of numbered chapter 7 cases. That practice would impose an intolerable burden on the United State trustee's severely limited support staff.[9] The default rule eliminates one round of paper.

Why should the Clerk care whether a case is closed or not? The explanation may not be readily apparent to anybody on the outside of the bankruptcy administrative system looking in. Of course, as with any government agency, statistics are maintained by the Administrative Office of the United States Courts on the rate at which each Clerk's office closes cases. These statistics are reported to the Congress as an essential part of the annual budgeting process for the operation of the courts, and for the district-by-district allocation of that appropriation by the Administrative Office. Apart from statistics and budgeting, one of the most important administrative functions of the Clerk is to collect filing fees in each bankruptcy case. It is only the Clerk, and not the United States trustee, who has the institutional duty of disbursing a standard fee to the panel trustee for "administering" a no-asset chapter 7 case.[10] The Clerk cannot, however, disburse that standard fee until the case is actually closed as evidenced by an entry by the Clerk in the docket of that case. Then the balance of the filing fee has to be periodically remitted to the United States Treasury as a revenue measure.

---

8. 11 U.S.C. § 704(9).

9. The 1991 Advisory Committee Note to Rule 5009 states, "This amendment facilitates the United States trustee's performance of statutory duties to supervise trustees and administer cases under chapters 7, 12, and 13 pursuant to 28 U.S.C. § 586."

10. 11 U.S.C. § 330(b)(1). "Chapter 7 trustees have an incentive to administer no asset cases promptly: they are not paid until after their services are rendered, . . . and the case is ready to be closed." *In re Hart*, 76 B.R. 774, 776 (Bankr.C.D.Cal.1987).

Thus, the bureaucratic function of Rule 5009 has really has nothing to do with the debtor.[11] For this reason, Rule 5009 cannot be construed as granting any substantive right or interest to the debtor in any property that came into the estate upon the filing of the chapter 7 petition by operation of law.

 Rule 5009 has to be read as creating a rebuttable presumption. The trustee has rebutted the presumption by averring that he was either intentionally misled by the debtors or their agent, the prospective broker, or that if he made an earlier misjudgment, then he is obligated to withdraw his no-asset report and to administer the asset in question as soon as he has learned of his earlier misjudgment.[12] The Rule impliedly leaves it to the discretion of the Court to determine what kind of showing a trustee has to make before he can burst the bubble of presumption. The Court is now satisfied that the trustee has burst that bubble. As a final consideration on this point, to the extent that the construction that the debtors' counsel offers for Rule 5009 is inconsistent with the express substantive provisions of section 554, it has long been a fundamental postulate in bankruptcy law that a Federal Rule of Bankruptcy Procedure cannot be construed to trump a substantive provision of the Code, and so counsel's argument fails on this point as well.

Instead, Rule 6007 sets forth the procedures the trustee or debtor in possession must take in order to effectuate abandonment of property of the estate. Fed. R. Bankr.P. 6007, provides in pertinent part:

(a) Notice of proposed abandonment or disposition; objections; hearing. Unless otherwise directed by the court, the trustee ... *shall* give notice of a proposed abandonment or disposition of property to the United States trustee, all creditors, .... party in interest may file and serve an objection within 15 days of the mailing of the notice, or within the time fixed by the court. If a timely objection is made, the court shall set a hearing on notice to the United States trustee and to other entitles as the court may direct. (Emphasis added)

Clearly in this instance the trustee did not take the needed steps to abandon the debtor's property.[13]

It is not necessary to address the debtors' reliance argument other than to say that merely listing a residence for sale does not constitute "reliance." Title to the property has not changed, and there are no other facts suggested by the debtors that begin to approach "reliance." Even stretching their argument to the fullest, the Court does not perceive that their "reliance" was reasonable when looking at this case as a whole.[14] The debtors never

---

**11.** "Moreover, under Section 350 and Rule 5009, the final act of administration could very well be a purely ministerial act of which the debtor and other parties would receive no notice." *Korvettes v. Sanyo Electric (In re Korvettes)*, 42 B.R. 217, 221 (Bankr.S.D.N.Y. 1984), *reversed on other grounds, In re Korvettes*, 67 B.R. 730 (S.D.N.Y.1986).

**12.** The Court in *Vonderahe v. Polaniecki*, 276 B.R. 856, 859–860 (S.D.Ohio 2001) stated that the "trustee's prior Interim Report listings of certain assets as having zero value did not constitute abandonment of assets in ab-

sence of an abandonment hearing and formal order of the bankruptcy court."

**13.** And in a case decided under the former Bankruptcy Rules, the court in *In re Teltronics Services, Inc.*, 39 B.R. 446, 453–454 (Bankr.E.D.N.Y.1984) stated that "all causes of action ... vested in the trustee ... They continued to be the property of the estate until the Court authorized their abandonment or the bankruptcy proceeding was closed."

**14.** In *In re Popa* 218 B.R. 420, 428 (Bankr. N.D.Ill.1998), *aff'd, Popa v. Peterson*, 238 B.R.

had the authority to list their residence for sale without notifying the trustee in the first place.

These debtors have scheduled very substantial unsecured claims that have been liquidated and are not subject to any bona fide dispute. It is a fair presumption that several creditors with allowable claims will file their proofs of claim upon receipt of a new notice of discovery of assets, and those with claims described as disputed or contingent by the debtor will also file their proofs of claim against the debtors, to which the trustee or the debtors may file objections.

In this case, the adversary proceeding filed by Mr. Klausing took until May 30, 2003 to be tried, and the plaintiff has been directed to file proposed findings of fact and conclusions of law by June 13, 2003, with the debtors given an opportunity to file their proposed counter findings of fact, conclusions of law, and supporting memorandum of law by June 27, 2003. Under these circumstances, this case may remain open for the next few years if either party to the adversary files a notice of appeal of any judgment or order of this Court.

Independent of the trustee's opposition to the debtors' motion, this Court has carefully reviewed the "market survey" that purportedly the trustee relied upon to the prejudice of the creditors of this estate. (The Court will not demean the debtors by suggesting that it appears that they instructed the broker concerning the range of value that would be useful for their purposes.) Nevertheless, a mere perusal of the "market survey" shows on its face that it was not prepared by an independent fee appraiser with no economic interest in the sale of the property or any prospective business relationship with the debtors. The enclosure letter explicitly states that the "surveyor" was hoping for the debtors to list their residence with them for resale. And even this Court's preliminary review of each of the "comparables" shows them to be materially misleading, based upon the dates of sale and the attributes of each of the three comparable properties. The "subject property" has three bedrooms and two baths, an eat-in kitchen, a fully finished basement, seven rooms, and a garage. Every other "higher priced" property has no more than six rooms and one of the "comparables" only has one bathroom. In addition, three of the four "comparables" show sales dates of not less than ninth months before the date of the "market survey." Assuming that all comparables continued to appreciate from their respective dates of closing to the date of this market survey, then those comparables would materially understate their value. It would be pointless to waste the time of this Court to conduct an evidentiary hearing with respect to the "market survey." On its face, this "market survey" bears very little probative value, and is likely to be inadmissible because it was not prepared by a licensed and disinterested appraiser to begin with.

In addition, this Court has to rely upon the combined legal and business expertise of the panel trustee and the proper exercise of his fiduciary duty on behalf of the creditors of the estate. If for any reason, the trustee has now determined that he may have been misled by the debtors or their agent in inducing him to file a no-asset report, this case remains open and he has the right or duty to correct any temporary misjudgment of realizable val-

395 (N.D.Ill.1999), the court denied the debtor's motion to compel the trustee to abandon property because it found that "there is substantial equity in the Property, which, when sold, will permit a substantial dividend to creditors. The Property is therefore not burdensome to the estate, but is of significant value and benefit to the estate."

ue. There are very substantial unsecured liabilities in this case, and the only apparent asset of any nonexempt value is the debtors' residence. The debtor has presented absolutely no proposed purchase and sale agreement for the property with an unrelated third party, and as Mr. Schoenewerk himself testified within the past two weeks, this is the most active season in this market. The debtors can prove no material reliance upon the trustee's initial no asset report. And if the trustee determines that the most expeditious practice is to list this property with an experienced real estate auctioneer, as many other trustees do under just these circumstances, then this is likely to lead to the highest price to be paid for the property. But if he wants to list it with a licensed broker in whom he has confidence, then that is again up to him, and either application will be noticed to the debtor and the debtors' counsel.

The Court does not find it necessary under the totality of the facts and circumstances to conduct an evidentiary hearing to determine whether the debtors or their prospective real estate agent did or did not deliberately mislead the chapter 7 trustee as to the then "present fair market value" of their residence in order to induce him to file a no-asset report. Mr. Schoenewerk has already testified that he cannot take any more time off from work at this new job in Virginia, nor can he bear the travel costs, let alone pay for the litigation defense costs. As the defendants' counsel represented within the past two weeks, Mrs. Schoenewerk's present health and emotional condition will be jeopardized if she has to participate actively in preparing for and testifying in any contested hearing or proceeding.

Instead the Court is prepared to rely upon its own situation sense to conclude that it simply defies credulity to argue that this property was properly valued in the schedules, and that within one year, the property has benefitted by market appreciation at least $85,000 to $95,000 in a lower-middle income residential area from a base of $145,000 to $155,000. That would be an increase of value for a modest single family residence in one year of approximately 60%. Even if the property were to sell for $205,000, and the debtors were permitted their $20,000 joint homestead exemption, there would still be an additional $45,000 in gross proceeds, before deducting closing costs to distribute to unsecured creditors. It would be a breach of the trustee's overriding fiduciary duty to maximize the distribution to holders of allowed unsecured claims to walk away from $45,000 or perhaps considerably more in net proceeds of sale.

This situation is analogous to a motion to vacate an order or judgment of the Court based upon a mistake or in order to avoid a palpable injustice under Fed. Bankr.R. Pro. 9024.[15] At this point in this chapter 7 case, it is obvious that the debtors want to relocate from this jurisdiction to Virginia without incurring further litigation costs or any further disruption to their family life, and that no legitimate equitable purpose would be served in granting the debtors the relief they now seek—to take the net proceeds of this sale to the prejudice of the creditors of this estate. The only interest they have in the property under New York State exemption law is the $20,000; bankruptcy law is not intended to subsidize the purchase of replacement homes of chapter 7 debtors.

15. If the trustee's performance was lacking in sufficient diligence, then the remedy for that negligence, if any, is surely not to punish the unsecured creditors of this estate, but to make a downward modification in the trustee's commission or his counsel's final fees.

## Conclusion

So now that the Court has established the uncontroverted fact that this case remains open and the reasons for this status, there is no legal or equitable basis for the debtors to allege that by virtue of section 554 or Rule 5009, the estate's interest in the property has been abandoned. Based upon these indisputable facts alone, including those in the record of this case for which this Court can take judicial notice, the debtors' motion is denied without prejudice.

The Court strongly urges the trustee and the debtors to save the estate and themselves the costs of protracted litigation by exploring a consensual resolution of this matter, and the Court is willing to lend its good offices to assist the parties in exploring the range of alternatives. In every dispute over dollars, well-advised parties should be able to reach a satisfactory resolution over the allocation of dollars. Since the debtors have already decided to sell the property and move out of the state before the beginning of the next school year, there should be no emotional issues of attachment to this property that should cloud the proper exercise of reason. Of course, the parties can only negotiate in a constructive manner when a firm selling price has been established and the sale has been approved by the Court after notice and hearing. It goes without saying that it is the duty of the debtors to assist the trustee [16] and his agents in making this property available for inspection by prospective purchasers and ensuring that upon receiving a call from the trustee or his agent in not less than twenty-four hours before any showing that the property will be made presentable to prospective purchasers. It will be in everybody's interest to co-operate to the fullest in order to make this sale as least disruptive as possible, and the season is already well underway.

So ordered.

---

16. 11 U.S.C. § 521(3) states that the debtor shall "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title …"