SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No. EC-16-1254-JuTaB |
| ) | |
| ANTHONY VINCENT LEONIS, ) | Bk. No.  1:12-bk-15487 |
| ) | |
| Debtor. ) | |
| _____ ) | |
| JAMES CIECIORKA; MARY JEAN ) | |
| CIECIORKA, ) | |
| ) | |
| Appellants, ) | |
| v. ) | **M E M O R A N D U M**[*] |
| ) | |
| RANDELL PARKER, Chapter 7 ) | |
| Trustee; ANTHONY VINCENT ) | |
| LEONIS; UNITED STATES TRUSTEE,) | |
| ) | |
| Appellees. ) | |
| _____ ) | |

Argued on March 23, 2017
at Sacramento, California

Submitted on June 1, 2017

Filed - June 8, 2017

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Rene Lastreto, II, Bankruptcy Judge, Presiding

Appearances:     James L. Pagano of Pagano & Kass, APC argued for
appellants James Cieciorka and Mary Jean
Cieciorka; Trudi G. Manfredo argued for appellee
Randell Parker, Chapter 7 Trustee.

_____

Before:  JURY, TAYLOR, and BRAND, Bankruptcy Judges.

_____

     [*] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8024-1.

-1-

Judgment creditors, James Cieciorka and Mary Jean Cieciorka (collectively, the Cieciorkas), appeal from the bankruptcy court's order overruling their objection to the "Chapter 7 Trustee's Final Account and Distribution Report Certification That the Estate Has Been Fully Administered and Application to Be Discharged" (Final Account) filed by Randell Parker, the chapter 7 trustee.[1] For the reasons explained below, we AFFIRM.

## I. FACTS

Anthony Vincent Leonis (Debtor) filed a chapter 7 petition on June 20, 2012. On the same date, Mr. Parker was appointed the trustee (Trustee).

In schedule A, Debtor listed his interest in four properties, including his undivided one-half interest in a parcel located in Livermore, California (Livermore Parcel)[2] with a value of $32,000. In schedule C, Debtor claimed an exemption in the Livermore Parcel under Cal. Civ. Proc. Code (CCP) § 703.140(b)(5) (the wildcard exemption) in the amount of $12,860.43. In schedule D, Debtor listed the Cieciorkas[3] as judgment lien creditors owed $433,000. The Cieciorkas' lien

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] This property is also referred to as the "Newman" property by Trustee and his counsel. In its Memorandum Decision regarding the award of Trustee's counsel's fees, the court refers to the property as the Livermore Parcel. The Newman property is the same as the Livermore Parcel.

[3] The Cieciorkas are Debtor's relatives.

encumbered the Livermore Parcel.

Trustee filed a motion to sell the Livermore Parcel. To effectuate the sale, Trustee entered into an agreement with the co-owners of the property who originally demanded that the property be partitioned. Trustee also entered into a stipulation with the Cieciorkas who agreed to release their judicial lien against the property in the event of a sale. Ultimately, there were four bidders at the sale, including the Cieciorkas. They were declared the highest bidder and purchased Debtor's interest in the Livermore Parcel for $215,000 in March 2015.

Meanwhile, Trustee continued his investigation of other possible nonexempt assets. Trustee learned that Debtor had made a $15,000 withdrawal from his Bank of America (BofA) account prepetition and requested an accounting. Debtor failed to provide documentation or an accounting regarding the funds. Accordingly, on May 21, 2015, Trustee filed an Application for 2004 Examination, seeking to examine Debtor and for production of documents relating to the funds. The bankruptcy court granted the application on May 22, 2015.

Debtor's 2004 exam was held on August 12, 2015. After conducting the exam, Trustee concluded that Debtor had provided sufficient documentation and testimony accounting for the $15,000 and was satisfied that the money had been spent for proper prepetition purposes. However, during the exam Trustee discovered an undisclosed asset in the form of accounts receivable (A/R). Trustee made a demand for turnover of the A/R.

At that time, Trustee was holding Debtor's exempt funds from the sale of the Livermore Parcel in the amount of $12,860.43. Debtor and Trustee agreed that Debtor would "trade" his exemption in the Livermore Parcel for an exemption in the A/R which he had already received. On September 15, 2015, Debtor amended schedule B to list the A/R in the amount of $12,860.43, and amended schedule C to claim an exemption under CCP § 703.140(b)(5) for the same amount. In schedule C, Debtor deleted his exemption in the Livermore Parcel for $12,860.43.

Trustee and his counsel, Trudi G. Manfredo, filed final fee applications. The Cieciorkas objected to about 10% of the fees requested by Ms. Manfredo as unnecessary or not adequately explained, including fees incurred for Debtor's 2004 exam. They also objected to Trustee's compensation, contending that the itemization of his expenses was inadequate and that he overstated his commission.

On January 7, 2016, the bankruptcy court heard the matters. The court allowed Trustee's fees and expenses with the exception of a clerical error about postage. In response to the Cieciorkas' objection to her fees for conducting the 2004 exam, Ms. Manfredo explained how she discovered the A/R due to Debtor's testimony and production of documents during that exam. She told the court about Trustee's demand for turnover of the A/R and explained that Debtor and Trustee reached an agreement whereby Debtor would amend his schedule C to protect the A/R and release his other exemption in the Livermore Parcel. The bankruptcy court took Ms. Manfredo's application for compensation under submission.

-4-

In a January 28, 2016 Memorandum Decision, the bankruptcy court found that the fees incurred by Ms. Manfredo for the 2004 exam were necessary and compensable. The bankruptcy court noted that after document production and testimony from Debtor, Trustee discovered the A/R and reached an agreement with Debtor whereby approximately $13,000 was added to the chapter 7 estate. The bankruptcy court allowed her compensation as requested with the exception of one duplicate entry for $442.50. The court entered an order awarding her $30,334.50 in fees and $682.83 in expenses.

In preparation for closing the case, pursuant to 28 C.F.R. § 58.7(a), Trustee submitted his final report (TFR) to the United States Trustee (U.S. Trustee).

After the TFR was certified by the U.S. Trustee, in compliance with 28 C.F.R. § 58.7(b), the TFR was filed in the bankruptcy court on February 5, 2016. The court served Notice of Trustee's Final Report And Applications For Compensation And Deadline To Object (NFR). The TFR included an outline of intended, rather than completed, distributions of estate assets. It showed the A/R as item 23, noting that it was unscheduled and had a net value of $10,627.07. In describing the asset, Trustee showed that Debtor provided proof that he received payment on the invoices postpetition and that Debtor had exempted the funds. Trustee indicated that $0.00 was received by the estate and that the asset was fully administered.

Although there is much discussion regarding item 23 in the record, this asset is not at issue in this appeal. Instead, it is item 24 which shows that Debtor withdrew $15,000 from his

-5-

"BofA account" prepetition. The nonexempt asset was listed as unscheduled, Trustee showed that $0.00 was received by the estate and indicated that the asset was fully administered.

Finally, the TFR showed the Cieciorkas with an allowed unsecured claim of $543,523.44 and indicated that distribution on the claim was $159,578.57.

On February 24, 2016, an amended TFR along with an amended NFR were filed in the bankruptcy court. Apparently the amendment was necessary to adjust distributions due to errors in Trustee's application for compensation. Trustee had made a clerical error for the requested postage which resulted in an overcharge of $123.48, and another error overstated Trustee's commission by $975. Due to the corrections, the amended TFR showed that the Cieciorkas would receive a distribution of $160,880.70 on their allowed unsecured claim.

On February 29, 2016, the bankruptcy court entered an order awarding Trustee compensation of $16,633.89 and expenses of $595.40.

On May 27, 2016, Trustee's Final Account was filed and the bankruptcy court served a notice giving parties in interest thirty days to object. In the Final Account, Trustee certified that administration of the estate was complete as the distributions outlined in the amended TFR had been made. On June 23, 2016, the Cieciorkas objected to the Final Account. They argued, among other things, that the Final Account did not show that Trustee had fully administered the nonexempt $15,000 cash withdrawal from the BofA account because the estate had received no value. The Cieciorkas complained that there was no

-6-

explanation why the $15,000 asset was not administered when it was included in the estate and apparently would be abandoned.

On August 4, 2016, the bankruptcy court held a hearing on the matter. The Cieciorkas withdrew most of their objections at the hearing except as to Trustee's listing of the $15,000 cash withdrawal. They expressed confusion over Trustee's inclusion of the $15,000 withdrawal as an "asset" of the estate when the estate received no value. The bankruptcy court overruled their objection, adopting its tentative ruling set forth in Civil Minutes as its final ruling.

On August 18, 2016, the Cieciorkas filed a notice of appeal from the bankruptcy court's ruling.

On October 7, 2016, the Clerk's office sent out a notice notifying the Cieciorkas that the order appealed was never entered on the bankruptcy court's docket and therefore the appeal was subject to dismissal for lack of jurisdiction.

On October 13, 2016, the bankruptcy court entered a civil minute order overruling the Cieciorkas objection to the Final Account. This order resolved the jurisdictional issue.

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court abuse its discretion by overruling the Cieciorkas' objection to Trustee's Final Account?

## IV. STANDARDS OF REVIEW

We review the bankruptcy court's overruling an objection to

-7-

a trustee's final report and account for abuse of discretion. See, e.g., Flores v. Salven (In re DDJ, Inc.), 2015 WL 3451555 (9th Cir. BAP May 29, 2015); Corbett v. Salven (In re Corbett), 2014 WL 1647393 (9th Cir. BAP April 24, 2014).

Under the abuse of discretion standard, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." United States v. Hinkson, 585 F.3d 1247, 1261-62 & n. 21 (9th Cir. 2009) (en banc). If the bankruptcy court identified the correct legal rule, we then determine under the clearly erroneous standard whether its factual findings and its application of the facts to the relevant law were: "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." Id.

We may affirm the bankruptcy court's orders on any basis supported by the record. See ASARCO, LLC v. Union Pac. R. Co., 765 F.3d 999, 1004 (9th Cir. 2014).

## V. DISCUSSION

The gravamen of this appeal is based on the Cieciorkas' belief that Trustee incorrectly described his disposition of the $15,000 BofA withdrawal or erred by listing it as an asset of the estate which was fully administered. They contend the asset was not fully administered as shown in the final reports or Final Account because the estate received no part of the nonexempt funds. According to the Cieciorkas, there is no evidence of what Trustee's investigation of the $15,000 withdrawal consisted of, what he found, and why he concluded, as he claims to have, that Debtor spent the money appropriately

-8-

pre-petition and thus the $15,000 never came into the estate. As discussed below, these arguments have no merit.

**A.    The Final Report And Account And Rule 5009**

One of the trustee's duties under § 704(9) is to file a final report and a final account of the administration of the estate with the bankruptcy court.  The purpose of the final report and account, and the hearings in connection with an objection from the U.S. Trustee or a party in interest, is to determine whether a given estate has been fully administered and whether fees and expenses should be allowed to the chapter 7 trustee.  See § 704(9); Lopez-Stubbe v. Rodriquez-Estrada (In re San Juan Hotel Corp.), 847 F.2d 931, 939 (1st Cir. 1988) ("The very purpose of a final accounting is to insure that trustees disclose and be held accountable for their handling of the estate.").

The notice requirements for a chapter 7 trustee's final report and final account are dictated by Rules 5009 and 2002(f)(8).  Rule 5009(a) states:

> If in a chapter 7 . . . case the trustee has filed a final report and a final account and has certified that the estate has been fully administered, and if within 30 days no objection has been filed by the United States trustee or a party in interest, there shall be a presumption that the estate has been fully administered.

Although Rule 5009 does not expressly require notice, the requirement of notice has been inferred.  In re Avery, 272 B.R. 718, 728 (Bankr. E.D. Cal. 2002) ("[I]f parties in interest have the right to object to the final report, someone must serve them with it.").  Under Rule 2002(f)(8), a "summary" of the trustee's final report in a chapter 7 case is required to be served on the

debtor and creditors "if the net proceeds realized exceed $1,500." Here, the net proceeds realized exceeded $1,500. The Cieciorkas were served with the TFR and Final Account.

Rule 5009 has been described as nothing more than a procedural rule for case closing:

> To see this Rule in context, one has to step back and understand that one of the reforms under the Bankruptcy Code, as enacted in 1978, was intended to relieve bankruptcy judges of the heavy burden of case administration in its most routine and tedious bureaucratic aspects, including the actual issuance of orders closing chapter 7 no-asset cases that comprise over 90% of the chapter 7 cases filed by natural persons. Most case administrative functions were ultimately reallocated to an administrative agency in the executive branch of the federal government, to wit, the Executive Office of the United States Trustees lodged in the U.S. Department of Justice and reporting ultimately to the U.S. Attorney General. One of the central functions of the Executive Office of the United States Trustee is to appoint and supervise the private panel of chapter 7 trustees. As part of the process of supervising chapter 7 cases, it became the primary administrative responsibility of the United States trustee to make certain that the panel trustees moved their assigned cases to an expedited closing. The function, however, of actual closing a case remained vested with the Clerk of the Court. Since the filing of a final report in a no-asset case still requires some sort of administrative review by the United States trustee this worked to ensure that trustees timely co-operated in the closing of no-asset cases.
>
> With this as the institutional background, it becomes understandable that this Rule is intended to address two governmental entities and not parties in interest, namely, the Clerk of the Bankruptcy Court and the United States trustee. This Rule sets up a 'default rule' that authorizes the Clerk to close a case, absent other unexpressed conditions, when a thirty-day period has run after the trustee files a no-asset report with the Clerk and the United States trustee and the United States has not filed an objection that would bring the case back to the attention of the judge assigned to the case. If there were no such default rule, the only way the Clerk's office could ascertain whether the United States trustee was fully satisfied with the chapter 7 trustee's administration of the case would be to insist that the United States

> trustee take the additional affirmative act of sending in periodic reports advising the Clerk to close a scheduled list of numbered chapter 7 cases. That practice would impose an intolerable burden on the United State trustee's severely limited support staff. The default rule eliminates one round of paper.

In re Schoenewerk, 304 B.R. 59, 63-64 (Bankr. E.D.N.Y. 2003).

Given the purpose behind Rule 5009, the bankruptcy court's scope of inquiry upon an objection to the trustee's final report or account is limited "to the question of whether the chapter 7 estate has been 'fully administered.'" In re The Law Firm of Frank R. Bayger, P.C., 2014 WL 3534084, at *1 (Bankr. W.D.N.Y. July 16, 2014). With this background, we proceed to the merits.

**B.    Analysis**

We are not persuaded by the Cieciorkas arguments on appeal for several reasons. First, Trustee certified that the case had been fully administered thereby raising the presumption in Rule 5009 that it had indeed been fully administered. The presumption is rebuttable. In re Schoenewerk, 304 B.R. at 64 ("Rule 5009 has to be read as creating a rebuttable presumption."). The Cieciorkas complain about how the "asset" was described in the TFR and that there was no evidence regarding Trustee's investigation of the $15,000 withdrawal; i.e., what he found, and why he concluded, as he claims to have, that Debtor spent the money appropriately pre-petition. These are merely complaints and not evidence that controverts the presumption that the estate was fully administered.

Next, the duty to supervise panel trustees is upon the U.S. Trustee. See 28 U.S.C. § 586(a)(1), (3). Since it is the U.S. Trustee's responsibility to supervise panel trustees, the

-11-

bankruptcy court was entitled to infer from the absence of an objection by the U.S. Trustee that the agency was satisfied with Trustee's level of detail and description of the assets contained in his final report. In any event, since supervisory duties lie with the U.S. Trustee, it is unlikely that a bankruptcy court has authority to order a trustee to amend his or her final report or final account to change the description of an asset due to the lack of detail. See In re Kelco Metals, Inc., 532 B.R. 912 (Bankr. N.D. Ill. 2015) ("There is no clear case that the bankruptcy court has authority to enter an order amending the Final Report, to impose an alternative final report or to order the Trustee to make such an amendment.").

Finally, trustees routinely and informally identify assets, make determinations as to value or benefit, and disregard assets that promise no benefit to the estate. The record shows that Trustee explained his entry on the final report regarding the $15,000 withdrawal; i.e., that Debtor provided documentation and testimony at his 2004 exam which adequately accounted for the funds. Thus, there was no basis for Trustee to pursue turnover of the funds to the estate for purposes of distribution. Without any controverting evidence from the Cieciorkas, the bankruptcy court could properly presume that Trustee acted prudently and on an informed basis in deciding whether to administer the asset. See United States v. Aldrich (In re Rigden), 795 F.2d 727, 730 (9th Cir. 1986) (under business judgment rule "[a] bankruptcy or organization trustee has a duty to exercise that measure of care and diligence that an ordinary prudent person would exercise under similar

-12-

circumstances.").

In sum, Trustee filed his Final Account certified under penalty of perjury disclosing the $15,000 withdrawal and its disposition. The Cieciorkas provided no evidence to overcome the presumption that the estate was fully administered or that somehow Trustee had erred. As the bankruptcy court observed, without evidence or analysis, a different description of the $15,000 withdrawal would not change the administration of the case. Accordingly, the bankruptcy court did not abuse its discretion in overruling the Cieciorkas' objection to the Final Account. See In re Schoenewerk, 304 B.R. at 64 ("[] Rule [5009] impliedly leaves it to the discretion of the Court to determine what kind of showing [the party in interest] has to make before he can burst the bubble of presumption.").

## VI. CONCLUSION

For the reasons stated, we AFFIRM.